CARLA CORAY, PAT DAVIS, FAY RAWLES and the
REPUBLICAN PARTY OF HAWAII, Plaintiffs-
Appellees, *v.* GEORGE R. ARIYOSHI, Lt.
Governor and Chief Election Officer,
State of Hawaii, Defendant-Appellant

No. 5373

JANUARY 30, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

Carla Coray, et al. (hereinafter appellees), filed a
complaint in the court below against George R. Ariyoshi,
Lieutenant Governor and Chief Election Officer (herein-
after appellant), seeking a restraining order to enjoin ap-
pellant from issuing a directive prohibiting "poll watch-
ers" from keeping or maintaining any record of reg-
istered voters who have or have not voted.

The trial court, after a hearing on the merits, permanently enjoined the appellant "from promulgating and enforcing or attempting to enforce the prohibition upon watchers."

## FACTS

The election involved herein was the general election of November 7, 1972.

The poll watchers were given the following instructions by the appellees, which stated *inter alia,* as follows:

2. *YOUR JOB*

 a. Go to your assigned polling place by 6:45 AM, in order to avoid disrupting the polling place when it opens at 7:00 AM. Put on your best SMILE and introduce yourself to the Chief Inspector, the Republican Board members, and all the clerks as the Republican poll watcher for your precinct. BE FRIENDLY. Explain to the Republican officials that you will be checking off the voters who have voted and would appreciate their cooperation in this effort. Be careful not to interfere with all officials and clerks.

 b. REMEMBER, you are responsible for continually observing the polling place to prevent vote fraud and for reporting any violations. Detailed instructions on Ballot Security are provided separately. (Hawaiian laws and procedures make outright fraud difficult).

 c. From 7:00 AM until 10:00 AM circle the number in front of the names of those Republicans and friendly voters on your list as they vote; with a red pencil.

 d. A Runner from V. S. Headquarters will meet you at a pre-agreed place at least 1,000 feet

from the entrance to the polls at 10 AM and again at 2 PM. The Runner will be carrying the Numerical Key. Positively identify him by making sure he is wearing a badge bearing the word "Runner" before going further.

e. Quickly, but calmly call off all *red* circled numbers on your list to the Runner. The Runner will circle those numbers on the Numerical Key which he takes back to V. S. Headquarters.

f. Return to the polls at once and begin again circling numbers of those who have voted, in *blue* pencil. Have lunch at a time convenient to you, catch up with any voters you may have missed, and continue circling in blue pencil until you meet the Runner at 2 PM.

g. At your 2 PM meeting with the Runner call only those numbers circled in blue pencil — when the call off has been completed, return to the polls at once and continue circling until the polls have closed, using lead pencil. Officially, this is at 6 PM, but remember that all those standing in line at 6 PM will be allowed to vote so stay until they have all finished.

h. Take your list to your V. S. Headquarters and hand it to your V. S. Leader.

REMEMBER:
IF POSSIBLE, STATION YOURSELF IN A POSITION WHERE YOU WILL BE ABLE TO HEAR THE NAME AND ADDRESS OF THE VOTERS AS THEY COME INTO THE POLLING PLACE AND/OR WATCH THEM SIGN IN TO VOTE. SINCE YOUR LIST IS ARRANGED IN ALPHABETICAL ORDER, ALWAYS LOOK AND/OR LISTEN FOR THE NAME AND THEN THE ADDRESS. HOWEVER, AS THERE MAY BE AS MANY AS FOUR DIFFERENT UNITS OF CLERKS, EACH WORKING ON ONE-HALF TO ONE-THIRD OF THE VOTING LIST, YOU WILL HAVE TO RELY PRIMARILY ON LOOKING OVER THE SHOULDERS OF THE CLERKS ON

A PERIODIC BASIS TO CHECK OFF NAMES OF VOTERS. CONTINUE TO CHECK OFF THE VOTERS AND GIVE THIS DATA TO THE VICTORY SQUAD RUNNERS WHENEVER THEY RETURN TO THE POLLING PLACE.

The poll watchers are appointed pursuant to HRS § 11-77 which provides:

§11-77 *Appointment of watchers; service.* (a) Each qualified political party shall be entitled to appoint no more than one watcher in each precinct including absentee precincts in which the candidates of such party are on the ballot. The watchers shall serve without expense to the State or county. All watchers so appointed shall be registered voters.

(b) Each watcher shall be provided with identification from the chief election officer, or by the clerk in the case of county elections, stating his name and the name of the party he represents. On election day the watcher shall present his identification to the chairman of election inspectors of the precinct or precincts where he is to serve.

(c) All watchers for precincts shall be permitted to observe the conduct of the election in the precinct. The watchers may remain in the precinct as long as the precinct is in operation subject to section 19-6.

(d) The watcher shall call the attention of the chairman to any violations of the election laws that he observes. After his attention is called to the violation the chairman shall make an attempt to correct such violation. If the chairman fails to correct the violation, the watcher may appeal to the clerk of the county.

The appellant informed the appellees that he would promulgate, pursuant to HRS §§ 11-132 and 19-6 (7), a certain memorandum to candidates and precinct chairmen of election inspectors entitled "Guidelines for elec-

tioneering," which, among other provisions not material herein, stated as follows:

Prohibited: In order to avoid the possibility of electioneering, watchers will not be allowed to keep or maintain any record of registered voters who have or have not voted.

## STATUTES

HRS § 11-2 provides:

§11-2 *Chief election officer.* (a) The lieutenant governor shall be the chief election officer for the administration of this title. He shall supervise all state elections. The chief election officer may delegate responsibilities in state elections within a county to the clerk of that county or to other specified persons.

(b) The chief election officer shall be responsible for the maximization of registration of eligible electors throughout the State. In maximizing registration the chief election officer shall make an effort to equalize registration between districts, with particular effort in those districts in which he determines registration is lower than desirable. The chief election officer in carrying out this function may make surveys, carry on house to house canvassing, and assist or direct the clerk in any other area of registration.

(c) The chief election officer shall maintain data concerning registered voters, elections, apportionment, and districting. He shall use this data to assist the reapportionment commission provided for under Article III, Section 4 of the Constitution.

HRS § 11-4 provides:

§11-4 *Rules and regulations.* The chief election officer may make, amend, and repeal such rules and

regulations governing elections held under this title, election procedures, and the selection, establishment, use, and operation of all voting systems now in use or to be adopted in the State, and all other similar matters relating thereto as in his judgment shall be necessary to carry out this title.

In making, amending, and repealing rules and regulations for voters who cannot vote at the polls in person and all other voters, the chief election officer shall provide for voting by such persons in such manner as to insure secrecy of the ballot and to preclude tampering with the ballots of these voters and other election frauds. Such rules and regulations, when adopted in conformity with chapter 91 and upon approval by the governor, shall have the force and effect of law.

HRS § 11-132 provides:

§11-132 *Admission within polling place.* The election inspectors shall, prior to opening the polls, set apart an area of one thousand feet in radius around the polling place to prevent interference with the conduct of the election. No person, other than the election officials, watchers, if any, the candidates, and such voters as are for the time being actually engaged in voting or going to and returning therefrom, shall be permitted within the area so set apart during the time appointed for voting, except that public sidewalks, alleys, roads, streets, and highways falling within the one thousand foot radius shall be open to persons and vehicles passing through. Any other person who remains or loiters within the area so set apart during the time appointed for voting shall be guilty of a misdemeanor. If a voter is manifestly physically disabled, the voter may be assisted by anyone through the area so set apart.

The chief election officer may allow nonvoter

groups to observe the election for educational purposes. The chief election officer shall use his discretion in granting such permission and insure that such persons whose applications are granted may observe the election at designated precincts in such a manner that they will not interfere with the election process.

HRS §§ 19-6 (6) and 19-6 (7) provide:

§19-6 *Misdemeanors.* The following persons shall be guilty of a misdemeanor:

. . . .

(6) Any person, other than those designated by section 11-132, who remains or loiters within the area set aside for voting as set forth in section 11-132 during the time appointed for voting.

(7) Any person, including candidates carrying on any campaign activities within the area described in section 11-132 on the day on which an election is being held for the purpose of influencing votes. Campaign activities shall include but not be restricted to the following:

(A) The distribution, circulation, posting, or staking of campaign cards, pamphlets, and other literature;

(B) The use of public address systems and other public communication media;

(C) The use of motor caravans or parades;

(D) The use of entertainment troupes or the free distribution of goods and services.

The "day of election" as used in this paragraph shall commence at midnight of the day

before the polls are opened and shall end with the closing of the polls.

. . . .

HRS § 19-7 provides:

§19-7 *Penalty.* Any person convicted of a misdemeanor under this chapter shall be fined not more than $500 or imprisoned not more than six months, or both.

## ISSUES

Appellant alleges that the trial court erred:

1) in not finding that recording names of those who have voted in order to influence others to vote is "campaign activity" within the meaning of HRS § 19-6 (7) ;

2) in not finding that a person engaged in such activity as above stated should be deemed "loitering" within the meaning of HRS §§ 11-132 and 19-6 (6) .

## OPINION

We are of the opinion that where a violation is legislated as a criminal offense the statute must be strictly construed. *Territory* v. *Shinohara,* 42 Haw. 29, 36 (1957).

HRS § 19-6 is entitled "Misdemeanors. The following persons shall be guilty of a misdemeanor."

HRS § 19-6 (7) makes specific provisions for various forms of conduct that are proscribed. However, nowhere is the conduct of the poll watchers as instructed by the appellees proscribed and considered as a misdemeanor.

We are of the opinion that, regardless of the fact that the information obtained by the poll watchers can be used and is used for the stated purpose in the instructions to poll watchers issued by appellees, where a criminal statute as HRS § 19-6 fails to proscribe specifically the alleged offense, it cannot be said that appellees are in violation of the statute.

Furthermore, appellant's argument that appellees are

in violation of HRS §§ 11-132 and 19-6 (6) is without merit. Laws in *pari materia*, or upon the same subject matter, will be construed with reference to each other. *State* v. *Kimball*, 54 Haw. 83, 503 P.2d 176 (1972). Where the poll watcher is a person authorized to be in the precinct in question and where his action therein, as in the instant case, is not specifically proscribed, it cannot be said that he is in violation of any of the statutes in question.

Under HRS §11-77 (c) and (d) the appointed watchers are authorized:

> (c) All watchers for precincts shall be permitted to observe the conduct of the election in the precinct. The watchers may remain in the precinct as long as the precinct is in operation subject to section 19-6;

and in addition thereto:

> (d) The watcher shall call the attention of the chairman to any violations of the election laws that he observes. After his attention is called to the violation the chairman shall make an attempt to correct the violation, the watcher may appeal to the clerk of the county.

Thus, it is clear to the court that the poll watchers are not only authorized to call the attention of the chairman to any violations of the election laws which they observe, but are also "authorized to observe the conduct of the election in the precinct." We believe that, under the authorization "to observe the conduct of the election in the precinct", the poll watchers can record the names of those who have voted.

If the clause "to observe the conduct of the election" in HRS § 11-77 (c) is strictly construed, then a poll watcher would not be able even to eat his lunch, go to the washroom or engage in any conduct that is not specifically authorized. The absurdity of such a strict construction is manifest. *See Territory* v. *Wong*, 40 Haw.

257, 260 (1953). Such a construction of the statute would criminalize conduct that is not specifically proscribed in the penal statute.

HRS § 19-6 (7) states:

Campaign activities shall include *but not be restricted* to the following: (Emphasis added.)

. . . .

The above is too broad in its implication. What is a "campaign activity"? Are we to leave that determination to the appellant? That raises grave constitutional questions. The appellant permitted, in several previous elections, the conduct of the poll watchers which conduct he now tries to prohibit. It certainly is a dangerous precedent to allow the enforcer of the law to decide what is criminal conduct and what is not. A resolution of the question of constitutionality of HRS § 19-6 would have been possible if the parties had properly appealed on said question and briefed the court on the matter. On the posture of the instant case legislative reconsideration is appropriate.

In the absence of constitutional objections, what is done beyond the 1000 feet perimeter with the information recorded by the poll watchers is a matter strictly for the legislature.

Judgment affirmed.

*Robert J. Jaress,* Deputy Attorney General (*George Pai,* Attorney General, of counsel), for defendant-appellant.

*Tobias C. Tolzmann* for plaintiffs-appellees.

---

DISSENTING OPINION OF ABE, J.

The officials of the Republican Party acknowledged that the job of its official watchers at the polls was as follows:

## 2. *YOUR JOB*

a. Go to your assigned polling place by 6:45 AM, in order to avoid disrupting the polling place when it opens at 7:00 AM. Put on your best SMILE and introduce yourself to the Chief Inspector, the Republican Board members, and all the clerks as the Republican poll watcher for your precinct. BE FRIENDLY. Explain to the Republican officials that you will be checking off the voters who have voted and would appreciate their cooperation in this effort. Be careful not to interfere with all officials and clerks.

b. REMEMBER, you are responsible for continually observing the polling place to prevent vote fraud and for reporting any violations. Detailed instructions on Ballot Security are provided separately. (Hawaiian laws and procedures make outright fraud difficult).

c. From 7:00 AM until 10:00 AM circle the number in front of the names of those Republicans and friendly voters on your list as they vote; with a red pencil.

d. A Runner from V. S. Headquarters will meet you at a pre-agreed place at least 1,000 feet from the entrance to the polls at 10 AM and again at 2 PM. The Runner will be carrying the Numerical Key. Positively identify him by making sure he is wearing a badge bearing the word "Runner" before going further.

e. Quickly, but calmly call off all *red* circled numbers on your list to the Runner. The Runner will circle those numbers on the Numerical Key which he takes back to V. S. Headquarters.

f. Return to the polls at once and begin again circling numbers of those who have voted, in blue pencil. Have lunch at a time convenient

to you, catch up with any voters you may have missed, and continue circling in *blue* pencil until you meet the Runner at 2 PM.

g. At your 2 PM meeting with the Runner call only those numbers circled in blue pencil — when the call off has been completed, return to the polls at once and continue circling until the polls have closed, using lead pencil. Officially, this is at 6 PM, but remember that all those standing in line at 6 PM will be allowed to vote so stay until they have all finished.

h. Take your list to your V. S. Headquarters and hand it to your V. S. Leader.

Under HRS § 19-6 (7), it is a misdemeanor for any person, including candidates, to carry on "any campaign activities within the area described in section 11-132[1] on the day in which an election is being held for the purpose of influencing votes." It also provides that "[c]ampaign activities shall include but not be restricted to the following" and specifies four different activities.

In my opinion, paragraphs c to g, inclusive, of the duties assigned to the Republican watchers at the polls most explicitly require the watchers to carry on campaign activities in violation of section 19-6 (7).

This court states that "the poll watchers are not only authorized to call the attention of the chairman to any violations of the election laws which they observe, but are also 'authorized to observe the conduct of the election in the precinct.' We believe that, under the authorization 'to observe the conduct of the election in the precinct,' the poll watchers can record the names of those who have voted." As to the foregoing statement of this court, I have no quarrel.

However, the duties of the watchers do not end there. The watchers are required to mark the names of Re-

---

[1] Sec. 11-132 restricts activities within a radius of one thousand feet around the polling place.

publican voters and other voters friendly to the Republicans and transmit this information to official runners at appointed places without the polling area at the two predetermined times. The very obvious purpose of the arrangement was to permit people at the Republican headquarters, or other appointed places, to call Republican and "friendly" voters, who had not voted in order to persuade them to go to the polls to vote for Republicans. Of course, the entire transaction of the activity to influence votes does not occur within 1,000 feet of the polling area; however, a substantial portion of the activity is initiated within 1,000 feet of the polling area. In my opinion, the actions required of the watchers by the directive come within the term "campaign activities" to influence votes and therefore are prohibited by the statute.

I dissent and would reverse.