935 P.2d 98

**Moanike'ala AKAKA and Samuel L. Kealoha, Jr., Plaintiffs,**

v.

**Dwayne D. YOSHINA, Chief Election Officer of the State of Hawai'i; Office of Elections of the State of Hawai'i; Mazie Hirono, Lieutenant Governor of the State of Hawai'i; the Office of the Lieutenant Governor of the State of Hawai'i; John Does 1–100; and Jane Does 1–100, Defendants.**

No. 20266.

Supreme Court of Hawai'i.

March 25, 1997.

384

Eric A. Seitz and Thomas F. Feeney, Honolulu, for plaintiffs.

Russell A. Suzuki, Lynette M. Matsushima and John P. Dellera, Deputy Attorneys General, Honolulu, for defendants Yoshina and Office of Elections.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In this original proceeding, plaintiffs Moanike'ala Akaka and Samuel L. Kealoha, Jr. (collectively, the plaintiffs) challenge their respective defeats in the November 5, 1996 special election for the office of Trustee for the Office of Hawaiian Affairs (OHA), claiming that Chief Elections Officer Dwayne D. Yoshina and the Office of Elections of the State of Hawai'i (collectively, the defendants [1]) did not properly obtain or handle the OHA ballots and that, therefore, (1) the votes could not be properly counted and (2) the OHA election results could not be properly certified. Consequently, the plaintiffs maintain that another special election must be conducted in accordance with proper voting procedures.

For the reasons set forth below, we hold that the plaintiffs have failed to meet their burden of demonstrating that irregularities in the voting procedures for OHA Trustees in the November 5, 1996 election either could have caused a difference in the outcome of the election of Akaka or Kealoha, or could have precluded the correct result from being ascertained. Accordingly, we instruct Chief Elections Officer Dwayne D. Yoshina to issue (1) a certificate of election for Hannah K. Springer to the office of OHA Trustee for the seat of the Island of Hawai'i and (2) a certificate of election for Colette Pi'ipi'i Machado to

---

1. The plaintiffs had originally named Lieutenant Governor Mazie Hirono and her office as defendants, but this court dismissed the complaint as to them by order dated December 19, 1996.

the office of OHA Trustee for the seat of the Island of Moloka'i.

## I. BACKGROUND

### A. The Complaint and the Motion to Dismiss

The plaintiffs were incumbent candidates running for re-election as OHA Trustees in the special election held in conjunction with the general election on November 5, 1996. Akaka lost her seat to Springer by a margin of seventy-two votes, and Kealoha lost his seat to Machado by a margin of 643 votes.[2] On November 22, 1996, they filed a complaint in this court, alleging that, "upon information and belief," a "number of Hawaiians and native Hawaiians ... who were eligible to vote in the OHA portion of the election[ ] were never offered or given ballots by which they could cast their votes for the candidates for OHA trustees." Akaka further averred that her own daughter did not receive a ballot until she asked for one and that "numerous" other eligible voters "told Plaintiff Akaka personally" that they, too, "were never offered [OHA] ballots in other elections as well as this past 1996 [special election] to vote for OHA Trustees, and that had they

been offered such ballots, they would have voted for the candidates for OHA Trustees."

Akaka also avers that she contacted the Election Office "in order to obtain further information regarding this matter, but ... that office ... [did] not respond[ ] in writing."

Because of these alleged irregularities, the plaintiffs raised a civil rights claim under U.S.C. Title 42, Section 1983, and an election contest claim pursuant to Hawai'i Revised Statutes (HRS) § 11–172 (1993). HRS § 11–172 provides in relevant part:

**Contests for cause; generally.** With respect to any election, any candidate ... may file a complaint in the supreme court. The complaint shall set forth any cause or causes, such as but not limited to, provable fraud, overages, or underages, that could cause a difference in the election results. The complaint shall also set forth any reasons for reversing, correcting, or changing the decisions of the precinct officials or the officials at a counting center in an election using the electronic voting system[.]

The plaintiffs contend that the alleged irregularities warrant relief pursuant to HRS § 11–174.5(b) (1993), entitled "Contests for

2. The final report for the 1996 special election for OHA Trustees was compiled by the Office of Elections. The following statewide results indicate the number of votes received by each candidate, the number of blank ballots (those ballots that were not marked for any candidate), and the number of over votes (those ballots that were marked for more than one candidate and were not included in any candidate's total):

OHA At Large:

| | |
|---|---|
| Apoliona | 26,757 |
| Kamali'i | 11,376 |
| Watson | 4,121 |
| Kalani | 1,686 |
| Hekipi | 1,455 |
| Herron | 1,295 |
| Kipili'i | 1,250 |
| Manuel | 622 |
| | |
| Blank ballots | 2,734 |
| Over votes | 806 |
| Total | 52,102 |

OHA Hawai'i Resident:

| | |
|---|---|
| Springer | 15,439 |
| **Akaka** | **15,367** |
| Kauhane | 11,753 |

| | |
|---|---|
| Akamu–Scott | 2,848 |
| Fergerstrom | 2,049 |
| | |
| Blank ballots | 4,545 |
| Over votes | 101 |
| Total | 52,102 |

OHA Kaua'i Resident:

| | |
|---|---|
| Keale | 18,275 |
| Perry | 9,994 |
| Kaiwi | 7,210 |
| Mansfield | 3,857 |
| Smith | 2,427 |
| Na'ea | 2,309 |
| Rego | 1,733 |
| | |
| Blank ballots | 6,200 |
| Over votes | 97 |
| Total | 52,102 |

OHA Moloka'i Resident:

| | |
|---|---|
| Machado | 16,184 |
| **Kealoha** | **15,541** |
| Ritte | 14,153 |
| | |
| Blank ballots | 6,176 |
| Over votes | 48 |
| Total | 52,102 |

cause in general, special general, and special elections," which provides in relevant part:

> The judgment [of the supreme court] may invalidate the general, special general, or special election on the grounds that a correct result cannot be ascertained because of a mistake or fraud on the part of the precinct officials; or decide that a certain candidate, or certain candidates, received a majority or plurality of votes cast and were elected. If the judgment should be that the general, special general, or special election was invalid, a certified copy thereof shall be filed with the governor, and the governor shall duly call a new election to be held not later than on the sixtieth day after the judgment is filed. If the court shall decide which candidate or candidates have been elected, a copy of that judgment shall be served on the chief election officer or county clerk, who shall sign and deliver to the candidate or candidates certificates of election, and the same shall be conclusive of the right of the candidate or candidates to the offices.

On December 6, 1996, in response to the complaint, the defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted. Although the plaintiffs had failed to submit any evidence in support of their contentions, thus rendering the complaint legally insufficient, *see* section II, *infra*, we nonetheless denied, in part, the defendants' motion to dismiss. We recognized that the integrity of the elections process is a matter of great public import and therefore granted to the plaintiffs an extension of time to adduce evidence in support of their election dispute claim.

Thus, by order dated December 19, 1996 [hereinafter, Order], we: (1) granted the motion in part, dismissing the civil rights claim as well as all claims against the Lieutenant Governor and her office; and (2) denied it in part as to the original proceeding brought pursuant to HRS § 11–172.

### B. *The Original Proceeding*

Because this is an original proceeding regarding an election dispute, we are authorized by statute to cause the parties to present their cases in writing. HRS § 11–174.5(b) provides in relevant part that, "[i]n cases involving general, special general, and special elections[,] the complaint shall be heard by the supreme court in which the complaint was filed as soon as it reasonably may be heard. . . . *At the hearing, the court shall cause the evidence to be reduced to writing* [.]" (Emphasis added.)

We are, moreover, vested with certain statutory powers to establish rules, to sanction the parties, and to compel the parties to provide necessary written information and written testimony so that we may fully adjudicate the dispute before us. HRS § 11–175 (1993) states:

> **Powers of supreme court; costs.** The supreme court may compel the attendance of witnesses, punish contempts, and do whatsoever else may be necessary fully to determine the proceedings, and enforce its decrees therein. The court may make such special rules as it may find necessary or proper. The costs shall be as provided by the supreme court by rule.

Pursuant to our statutory powers, we "caused the evidence to be reduced to writing." HRS 11–174.5(b). In the Order, we instructed the parties, within specified time frames, to file memoranda of law regarding the HRS § 11–172 claim and to attach as exhibits all evidence in support of their respective positions. The parties were directed to submit all evidence in conformity with the Hawai'i Rules of Evidence (HRE) and to submit the pleadings in conformity with the Hawai'i Rules of Appellate Procedure (HRAP). Additionally, we specifically notified the parties that "extensions of time will not be granted."

### C. *Plaintiffs' Memorandum of Law and Exhibits 1 through 16*

On January 12, 1997, the plaintiffs filed their "Memorandum of Law" and "Exhibits 1–16." In their memorandum, the plaintiffs argue that irregularities in the election process produced "unfair" and "unreliable" election results because of the defendants' failure to properly: (1) register Hawaiians to vote in elections for OHA Trustees; (2) instruct precinct officials to provide ballots to those prop-

erly registered; (3) ensure that ineligible voters were not permitted to vote; and (4) ensure that the election was conducted in accordance with constitutional, statutory, and other applicable guidelines.

In support of these contentions, the plaintiffs have submitted sixteen exhibits. Included in the exhibits are: (1) an affidavit from Akaka identifying (a) two people who have told her that they are prepared to testify that they were not given OHA ballots, (b) one person who Akaka states knows of several others who were not given ballots, and (c) Akaka's averment that "I have requested access to voting records, voter lists, and other information about the recent OHA election procedures including access to several thousand ballots which apparently were not counted, but thus far I have received none of the information that I have been seeking"; and (2) letters or affidavits of sixteen persons who allege that they are knowledgeable of voting irregularities [hereinafter, submissions].[3] Additionally, the plaintiffs request an extension of time to conduct further discovery and to hold an evidentiary hearing.

### D. Defendants' Memorandum of Law and Exhibits A through C

In their responsive memorandum of law, filed February 4, 1997, the defendants raise only one defense: that plaintiffs have failed to show that the OHA election was affected by mistakes or fraud that could have changed the results of the election or made it impossible to ascertain the correct result. Defendants point out that, in their complaint, the plaintiffs alleged that "numerous" voters and "a number of Hawaiians" told Akaka that they did not receive OHA ballots in the 1996 election. The defendants contend that, when "[p]ut to their proof, however, Plaintiffs have not been able to meet their burden."

The defendants have submitted three exhibits. The first is an affidavit of Maura Meyer, the Coordinator of Precinct Operations. Attached to her affidavit are (a) applications for voter registration/ballot, demonstrating that some of the persons who

submitted that they were wrongfully denied an OHA ballot had failed to register, and (b) pages from the official poll book of voters, demonstrating that all but two of the people complaining of confusion in getting an OHA ballot nonetheless received one. The second exhibit is Yoshina's affidavit reporting the official results of the election. The third is the circuit court's order temporarily restraining Akaka and Kealoha from acting as *de facto* or holdover Trustees.

### E. The Plaintiffs' Reply Memorandum

In their reply memorandum, filed February 14, 1997, the plaintiffs concede that they "cannot provide conclusive 'evidence' of the extent to which voting irregularities occurred in the November 5, 1996 election." Instead, they argue that they need, but have been denied, "OHA voting lists and elections files" that are in the custody and control of Mr. Yoshina. The plaintiffs contend that, if these materials could be delved into, "Mr. Yoshina [would be] . . . entirely capable of providing evidence to dispel any appearances of irregularities and to demonstrate to the Plaintiffs, the Court, and a concerned community that the most recent OHA elections were fairly, impartially, and properly conducted in accordance with applicable standards[.]" Accordingly, the plaintiffs request additional time to conduct discovery and a "further formal inquiry."

### II. DISCUSSION

We have held that a complaint challenging the results of an election pursuant to HRS § 11–172 fails to state a claim unless: (1) the plaintiffs demonstrate errors that would change the outcome of the election, *Elkins v. Ariyoshi,* 56 Haw. 47, 48, 527 P.2d 236, 237 (1974) *(per curiam );* *Funakoshi v. King,* 65 Haw. 312, 314, 651 P.2d 912, 913 (1982) *(per curiam );* *Lewis v. Cayetano,* 72 Haw. 499, 504, 823 P.2d 738, 741 (1992); or (2) the plaintiffs demonstrate that the correct result cannot be ascertained because of a mistake or fraud on the part of the precinct officials. HRS § 11–174.5(b).

---

**3.** For purposes of discussion, we will refer to the plaintiffs' evidence collectively as submissions. By our count, there are twenty such submissions: Akaka's affidavit, the potential testimony of three people with whom Akaka has spoken, and the letters or affidavits of sixteen individuals.

■ Under the first circumstance, "the petitioner must 'show that he [or she] ha[s] actual information of mistakes or errors sufficient to change the result.'" *Funakoshi,* 65 Haw. at 316–17, 651 P.2d at 915 (quoting *Brown v. Iaukea,* 18 Haw. 131, 133 (1906)). The petitioner has the burden of demonstrating that the "specific acts and conduct of which they complain would have had the effect of changing the results[.]" *Elkins,* 56 Haw. at 49, 527 P.2d at 237. In the absence of facts showing that irregularities exceed the reported margin between the candidates, the complaint is legally insufficient because, even if its truth were assumed, the result of the election would not be affected. *Id.*[4]

■ Alternatively, the petitioner must demonstrate that the fraud or mistake of precinct officials made it impossible to ascertain the correct result. HRS § 11–174.5; *Akizaki v. Fong,* 51 Haw. 354, 461 P.2d 221 (1969).

It is not sufficient that the petitioner points to a "poorly run and inadequately supervised election process" that evinces "'room for abuse'" or "'possibilities of fraud.'" *Elkins,* 56 Haw. at 48, 527 P.2d at 237. An election contest cannot be based upon mere belief or indefinite information. *Kulike v. Fern,* 19 Haw. 278, 283 (1909). An analysis of our prior case law addressing election disputes demonstrate that the plaintiffs in this case have failed to meet their burden under either circumstance.

In *Funakoshi,* the plaintiff was one of four candidates seeking the Democratic nomination in the 1982 primary election. The defendant-intervenor defeated the plaintiff by a margin of eighty votes. In her complaint, the plaintiff alleged that she could identify voters in excess of the margin of defeat who had been assigned to the wrong polling location. However, when "put to her proof," the plaintiff was only able to produce the affidavits of two voters who declared that their address was not listed properly on the polling books and the affidavits of five voters who claimed that they did not vote in the primary because they could not vote for the plaintiff. We held that "[t]he record, even with these affidavits, [was] insufficient to prove that these mistakes would have had the effect of overcoming the eighty-vote margin of the successful candidate[.]" *Funakoshi,* 65 Haw. at 317, 651 P.2d at 915.

Similarly, in *Elkins* we held that the plaintiff's allegations of, *inter alia,* elections officials' misuse of duplicated ballots, failure to distribute ballots, and failure to properly instruct precinct officials was insufficient to demonstrate that the results of the election would have been changed. *Elkins,* 56 Haw. at 48, 527 P.2d at 237. Therefore, "the complaint [was] legally insufficient and ... it fail[ed] to state a claim against the defendants upon which relief [could] be granted." *Id.* at 49, 527 P.2d at 237.

And finally, in *Akizaki,* we were unable to determine the result of an election where the margin between the putative winner and the challenger was only two votes. In that case, the challenger proved that at least nineteen ballots were invalid, but had been commingled with the valid ballots and counted. Accordingly, we were unable to determine the result and therefore held that a new election was mandated. 51 Haw. at 360, 461 P.2d at 224.

■ In the case before us, the defendants argue that, of the plaintiffs' twenty submissions, seventeen are inadmissible hearsay because they either relate events that were told to one person by another, or they are unsworn. HRE Rule 801 provides that "'[h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE Rule 802 provides that "[h]earsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawaii supreme court, or by statute."

Although we agree that much of the plaintiffs' submissions are based on hearsay, and

4. HRS § 11–172, by its plain language, requires the complaint to "set forth any cause ... that *could* cause a difference in the election." (Emphasis added.) Whether this standard is more lenient than our case law suggests is an issue we leave for another day. As discussed *infra,* the plaintiffs' evidence is insufficient because, even if accepted as true, it could not and would not cause a difference in the outcome of the election.

thus inadmissible, such violations of HRE 802 are of no consequence in light of the facts of this case. In other words, even if we were to accept all of the plaintiffs' submissions, the evidence provides the identity of only two registered OHA voters who were wrongfully denied an OHA ballot. Defense exhibits prove that, aside from the two persons wrongfully denied an OHA ballot, the others were either unregistered OHA voters or were OHA voters who did in fact receive an OHA ballot.

As for allegations of irregularity other than the denial of a ballot to two voters, the plaintiffs' evidence merely points to confusion on the part of precinct officials in distributing ballots or to voters' failure to register as an OHA voter when renewing their driver's license. This simply demonstrates potential "room for abuse" and "possibilities of fraud." *Elkins,* 56 Haw. at 48, 527 P.2d at 237.

Thus, the plaintiffs' evidence proves only that two people were actually wrongfully denied ballots. Assuming that both of these voters would have voted for Akaka and Kealoha, the two votes could not have made any difference in the outcome. Consequently, the plaintiffs have been unable to produce evidence of "specific acts and conduct . . . which would have had the effect of changing the results[.]" *Elkins,* 56 Haw. at 49, 527 P.2d at 237. And, unlike the *Akizaki* court, we are not faced with a situation where the votes received cannot be properly counted and the correct result "cannot be ascertained." HRS § 11–174.5; *Akizaki,* 51 Haw. at 361, 461 P.2d at 225. In the plaintiffs' own words of concession, they have failed to "provide conclusive 'evidence' of the extent to which voting irregularities occurred in the November 5, 1996 election."

■ Despite conceding failure, the plaintiffs argue that they need more time in order to gain access to "several thousand ballots . . . [that] apparently were not counted" so that Yoshina can provide "evidence to dispel any appearances of irregularities and to demonstrate to the Plaintiffs, the Court, and a concerned community that the most recent OHA elections were fairly, impartially, and properly conducted in accordance with applicable standards[.]"

However, we are required to deny this request for additional time. First, the plaintiffs misapprehend which party bears the burden of proof. It is not incumbent upon Yoshina to demonstrate the integrity of the results; rather, as previously stated, the burden is upon the plaintiffs to show that the result would be different or that the result is not ascertainable. Second, the plaintiffs have had since November 5, 1996 to gather information, during which time, they have been able to specifically identify only two people who were wrongfully denied ballots. In our Order, we expressly informed the parties that no extensions of time would be granted. However, at no time during this period that the plaintiffs were allegedly experiencing discovery difficulties did they file a motion to compel the production of evidence, *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 37,[5] or in any other way seek the assistance of this court. *See* HRAP Rule 27.[6] Instead, they merely complain that they require an extension of time to delve into the voting lists, elections files, and ballots. This, we believe, is an example of the quintessential "fishing expedition" that we held was prohibited in *Brown.* As we reiterated in *Funakoshi:*

**5.** HRCP Rule 37, applicable to this original proceeding pursuant to HRAP Rule 49, provides in relevant part that "[a] party . . . may apply for an order compelling discovery . . . *to the court in which the action is pending."* (Emphasis added.)

**6.** HRAP Rule 27, relating generally to motions in the appellate courts, provides in relevant part that:

**(a) Content of Motions; Response.** Unless. another form is elsewhere prescribed by these rules, an application for an order or other relief shall be made by filing a written motion for such order or relief with proof of service on all other parties. The motion shall contain or be accompanied by any matter required by a specific provision of these rules governing such a motion, shall state with particularity the grounds upon which it is based, and shall set forth the order or relief sought. If a motion is supported by briefs, affidavits or other papers, they shall be served and filed with the motion. Any party may file a written response in opposition to a motion within 5 days after service of the motion, but the court may shorten or extend the time for responding to any motions as provided in Rule 26(d).

**390**

In *Brown v. Iaukea,* 18 Haw. 131 (1906), the Republican candidate for sheriff of the County of Honolulu brought suit under the … [election dispute] provisions claiming that he was the winner of the general election in which the Democratic candidate won by a majority of only fourteen votes. The petitioner in *Brown* alleged that 220 votes cast in his favor were not counted while 160 illegal votes were counted for his opponent and but for these irregularities, he would have won by a margin of more that 350 votes. The Court in *Brown* took the position that the statute did not permit a recount as such or a mere fishing expedition undertaken in the hope that in an examination of all the ballots enough might be discovered to change the result. The court held that the petitioner must show that he had actual information of mistakes or errors sufficient to change the result.

*Funakoshi,* 65 Haw. at 317–18, 651 P.2d at 915 (quoting *Brown,* 18 Haw. at 133) (citations and internal quotation marks omitted).

We therefore hold that the plaintiffs have failed to demonstrate good cause for an extension of time and such request is hereby denied.

### III. *CONCLUSION*

For the reasons set forth above, we hold that the plaintiffs have failed to meet their burden of demonstrating that irregularities in the voting procedures for OHA Trustees in the November 5, 1996 election either could have caused a difference in the outcome of the election of Akaka or Kealoha, could have precluded the correct result from being ascertained. Accordingly, we instruct Chief Elections Officer Yoshina to issue (1) a certificate of election for Hannah K. Springer to the office of OHA trustee for the seat of the Island of Hawai'i and (2) a certificate of election for Colette Pi'ipi'i Machado to the office of OHA trustee for the seat of the Island of Moloka'i.