**Electronically Filed**
**Supreme Court**
**SCEC-22-0000707**
**20-JAN-2023**
**02:54 PM**
**Dkt. 81 FFCL**

SCEC-22-0000707

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

_____

J. NOELANI AHIA, SHAYNE NAMEAAEA HOSHINO, KACI-CHEREE DIZON, SHAWN-CHRISTIAN DIZON, CODY NEMET, FAY MCFARLANE, NORRIS MCFARLANE, JADE CHIHARA, KEVIN BLOCK, OLIVIA NGUYEN, TRINETTE FURTADO, KEISA LIU, CAROL LEE KAMEKONA, EMILIE VINCENT, LAURA JOHNSON, HARRY JOHNSON, SARA TEKULA, RENA BLUMBERG, MAYA MARQUEZ, JASON MEDINA, STACEY MONIZ, CHRISTY KAHOOHANOHANO, REAGAN KAHOOHANOHANO, ZION EBBERSON, RAUL GOODNESS, TERRILL JAMES KANE ALII WILLIAMS, LORI SIERRA KNIGHT, GRETCHEN LEISENRING, JONATH PADILLA, ALENA ORNELLAS, and SANDRA IMBERI IOAKIMI, Plaintiffs,

vs.

ALICE L. LEE, KATHY L. KAOHU, County Clerk, County of Maui, and SCOTT T. NAGO, Chief Elections Office, State of Hawai'i, Defendants.

_____

ORIGINAL PROCEEDING

FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT
(By: Recktenwald, C.J., Nakayama, McKenna, and Eddins, JJ., and Wilson, J., dissenting)

Upon consideration of the "Complaint for Election Contest" filed by the Plaintiffs on November 25, 2022 (complaint), the parties' submissions, and oral argument, we conclude that the

Plaintiffs failed to establish a viable election challenge that would "cause a difference in the election results." See Hawai'i Revised Statutes (HRS) § 11-172 (Supp. 2021). In accordance with HRS § 11-174.5 (Supp. 2021) we enter the following findings of fact, conclusions of law and judgment.

**FINDINGS OF FACT**

1. As of 2020 the elections in the State of Hawai'i have been conducted primarily by mail, but in-person voting is still available at voter service centers. See HRS §§ 11-101 (Supp. 2021), 11-109 (Supp. 2021).

2. On November 8, 2022, the County of Maui held a nonpartisan general election for the seat of the Wailuku-Waihe'e-Waikapū councilmember (subject election contest). The two candidates were Defendant Alice L. Lee and Plaintiff Noelani Ahia (also known as J. Noelani Ahia).

3. For the subject election contest, Defendant Scott T. Nago, Chief Election Officer for the Office of Elections, State of Hawai'i (Chief Election Officer) was responsible for the printing and counting of ballots. See HRS § 11-110(b)(1)(B) (Supp. 2021). Defendant Kathy L. Kaohu, in her official capacity as the County Clerk of Maui County (Clerk) was responsible for voter registration, mailing ballots, voter service centers, receipt of ballots, and reviewing the return identification envelope received from the voter to confirm it

2

was signed.  HRS § 11-110(b)(1)(A); see HRS §§ 11-106, 11-108 (Supp. 2021).

4.    HRS § 11-102 (Supp. 2021) sets forth the procedures for conducting elections by mail.  Under this process, on or about Friday, October 21, 2022, the Clerk began mailing out the ballot packages to the registered voters.  See HRS § 11-102(b). The ballot package to a voter includes: (1) An official ballot; (2) A return identification envelope with postage prepaid; (3) A secrecy envelope or secrecy sleeve; and (4) Instructions.  HRS § 11-102(a).

5.    The Clerk from Saturday, October 22, 2022 until Wednesday, November 9, 2022 at approximately 5:30 a.m. (Dkt. 49:4, ¶ 16) reviewed all of the return identification envelopes submitted by the voters, and the number of return identification envelopes reviewed each day follows:

| DATE | NUMBER REVIEWED |
|---|---|
| Saturday, October 22, 2022: | 6 |
| Sunday, October 23, 2022: | 0 |
| Monday, October 24, 2022: | 1,699 |
| Tuesday, October 25, 2022: | 2,738 |
| Wednesday, October 26, 2022: | 2,614 |
| Thursday, October 27, 2022: | 2,678 |
| Friday, October 28, 2022: | 1,786 |
| Saturday, October 29, 2022: | 2,412 |
| Sunday, October 30, 2022: | 0 |
| Monday, October 31, 2022: | 590 |
| Tuesday, November 1, 2022: | 2,940 |
| Wednesday, November 2, 2022: | 4,698 |
| Thursday, November 3, 2022: | 3,438 |
| Friday, November 4, 2022: | 2,324 |
| Saturday, November 5, 2022: | 2,453 |
| Sunday, November 6, 2022: | 0 |

```
Monday, November 7, 2022:          5,093
Tuesday, November 8, 2022:        15,516
```

See also HRS § 11-108(a) (establishing the earliest date ballot processing for tabulation may begin). With respect to the 15,516 return identification envelopes that were reviewed by the Clerk on Tuesday, November 8, 2022, some of these were reviewed into the early morning on November 9, 2022. The Clerk completed the review of return identification envelopes by approximately 5:30 a.m. on Wednesday, November 9, 2022. See HRS § 11-108(b).

6. From all of the return identification envelopes received from voters, the Clerk determined 865 were deficient based on one of the grounds set forth in HRS § 11-106, including an unsigned affirmation, an affirmation signature that did not match a reference signature image, or another condition such as a tampered ballot. For all 865 of these voters, the Clerk mailed a notice to each voter that informed the voter of the deficiency and provided information on how to cure the deficiency ("notice-to-cure"). See HRS §§ 11-106, 11-108.

7. The Clerk mailed the notice-to-cure to the 865 voters with deficient return identification envelopes as follows:

```
October 26, 2022:   64 notices
October 27, 2022:   67 notices
October 28, 2022:   32 notices
October 31, 2022:   60 notices
November 1, 2022:   10 notices
November 3, 2022:  149 notices
November 4, 2022:   60 notices
November 5, 2022:   37 notices
```

4

```
November 7, 2022:    55 notices
November 8, 2022:    89 notices
November 10, 2022:   27 notices
November 12, 2022:   215 notices

Total:               865
```

8.    Ultimately, of these 865 voters with deficient return identification envelopes 159 of the voters timely responded to the notice-to-cure and corrected the deficiency.  At the end of the review period on November 16, 2022 there remained 706 uncured and deficient return identification envelopes.  For these 706 ballots, the Clerk was not able to establish their validity and, thus, none of them were counted.  See HRS § 11-108(c).

9.    The crux of Plaintiffs' complaint was the Clerk's decision to delay mailing the notice-to-cure to some voters on Saturday, November 12, 2022.  At the time the complaint was filed it appears the Plaintiffs did not know exactly how many of the notice-to-cure were mailed on November 12, 2022.  Based on the evidence later submitted in this case, it is undisputed that only 215 voters were mailed the notice-to-cure by the Clerk on November 12, 2022.  For all 215 of these voters, the Clerk received the ballots by no later than Tuesday, November 8, 2022.  Yet the Clerk waited four calendar days, until Saturday, November 12, 2022, to mail the notice-to-cure.

10. Pursuant to HRS § 11-106, these 215 voters had until Wednesday, November 16, 2022 to correct the deficiency with the ballot or the vote would not be counted. See HRS § 11-108(c)

11. The Clerk gave at least three reasons to explain why the Clerk had to delay mailing the notice-to-cure to these 215 voters by four calendar days. First, on the election day (November 8, 2022) the Clerk's election officials were providing assistance to voters at the voter service center. Second, on November 9, 2022 and November 10, 2022 the Clerk's election officials were "dismantling" the voter service center to return the facility to another department of the county, and were also returning rented equipment, dismantling cameras and storing election equipment. Third, on November 11, 2022 the post office was closed because it was a federal holiday. Thus, it was impossible to mail the 215 notices on November 11, 2022.

12. The record establishes that at least some of these 215 voters received the notice-to-cure in the mail on Tuesday, November 15, 2022. Thus, one-day before the deadline to validate the ballot. See HRS §§ 11-106, 11-108(c).

13. In addition to this delayed-mailing issue, the Plaintiffs also challenge the decision by the Clerk to withhold the names of the voters with deficient return identification envelopes from Plaintiff Ahia. Specifically, on Monday, November 14, 2022, Plaintiff Ahia made a verbal and written

6

request to the Clerk for "a copy of the list of voters whose ballots had not been counted because their return identification envelopes had been deemed deficient." Dkt. 2 at 2, ¶ 4. The Clerk denied Plaintiff Ahia's request "on the grounds that the information was not public but between the voters on the list and her office." Id., ¶ 7.

14. On November 22, 2022, the final result for the office of councilmember for Wailuku-Waiheʻe-Waikapū was reported by the Office of Elections as follows: Defendant Lee had received 22,733 votes; and, Plaintiff Ahia had received 22,220 votes. Thus, the vote differential is 513 votes in favor of Defendant Lee (election result).

15. On November 25, 2022, Plaintiffs filed the election contest with this court and thereby challenged the election result. The claims stated in the complaint are addressed below. The Plaintiffs include the candidate, Plaintiff Ahia, as well as thirty voters who reside within the subject election district.

16. Subsequently, the Defendants moved to dismiss the complaint, or in the alternative for summary judgment. Plaintiffs have also moved for summary judgment. In accordance with HRS § 11-174.5, the parties also submitted evidence for the court to review, including declarations and records.

17. On January 19, 2023, this court heard oral argument.

## CONCLUSIONS OF LAW

1.  To prevail on an election complaint the plaintiff must establish a mistake by an election official that "could cause a difference in the election results." HRS § 11-172. "We read the words 'difference in the election results'" in HRS § 11-172 "to mean a difference sufficient to overturn" the final election results reported by the Chief Election Officer. See Elkins v. Ariyoshi, 56 Haw. 47, 49, 527 P.2d 236, 237 (1974). But where the specific irregularities complained of do not "exceed the reported margin between the candidates, the complaint is legally insufficient because, even if its truth were assumed, the result of the election would not be affected." Akaka v. Yoshina, 84 Hawai'i 383, 388, 935 P.2d 98, 103 (1997).

2.  At Count 1 the Plaintiffs allege it was an error or mistake by the Clerk to wait until Saturday, November 12, 2022 to mail notice to voters of "alleged deficiencies in their return identification envelopes and instructions on how to cure them." Dkt. 1 at 6, ¶ 29.[1] On this record, it is undisputed that 215 notice-to-cure were mailed on November 12, 2022.

3.  Under HRS § 11-108(c) "[t]he clerk shall make reasonable efforts to determine the validity of ballots within seven days following an election day." HRS § 11-108(c).

---

[1] The Plaintiffs' complaint at Count 1 is not barred by HRS § 11-106 because the claim goes to the reasonableness of the Clerk's actions as set forth in HRS § 11-108.

8

4. As it relates only to the 215 voters who were mailed the notice-to-cure on November 12, 2022, we conclude the Clerk did not make reasonable efforts to determine the validity of these ballots. See HRS § 11-108(c). It was a mistake for the Clerk to prioritize the breakdown of the voter service center to return the facility to another department of the county and the related activities of returning rented equipment or storing election equipment over providing the notice-to-cure to these 215 voters. Id.

5. We are not persuaded by the Clerk that it was reasonable to prioritize this other work over contacting voters with deficient return identification envelopes. As this court has stated, "The right to vote is perhaps the most basic and fundamental of all the rights guaranteed by our democratic form of government." Akizaki v. Fong, 51 Haw. 354, 356, 461 P.2d 221, 222-23 (1969). Accordingly, the Clerk should have prioritized completing the specific activities required to protect the voters' fundamental right to vote.

6. Thus, we find that it was an error to delay mailing the 215 notice-to-cure to voters by four calendar days to November 12, 2022. The notice-to-cure should have been mailed sooner.[2]

---

[2] The Clerk also waited until November 14, 2022 to begin calling the voters with deficient return identification envelopes. Yet the record is silent as to why the Clerk waited to call these voters when the vast majority

9

7. Based on the record, the court holds that the mistake by the Clerk to wait until November 12, 2022 to mail the notice-to-cure to the 215 voters would not change the outcome of the election. See HRS §§ 11-172, 11-174.5. This is because the reported vote margin between the candidates is 513 votes in favor of Defendant Lee. Accordingly, as to Count 1, the court rules in favor of Defendants and against Plaintiffs.

8. At Count 2, Plaintiffs allege the Clerk failed to correctly follow Hawaiʻi Administrative Rule (HAR) § 3-177-652 during the review of the return identification envelopes.

9. In an election contest the burden is on the petitioner to establish a mistake that would change the result. See Akaka, 84 Hawaiʻi 383, 935 P.2d 98. On this record, the Plaintiffs failed to carry this burden.

10. Here, the record establishes that of the voters with return identification envelopes that the Clerk determined were deficient under HAR §§ 3-177-651 and 3-177-652, only 215 of these voters were mailed the notice-to-cure on November 12, 2022. All of the remaining 491 voters were provided with reasonable notice and the opportunity to correct the deficiency on the return identification envelope before the November 16, 2022 deadline. See HRS §§ 11-106, 11-108(c).

---

of the deficient return identification envelopes would have been identified before the November 8, 2022 election.

10

11. Based on the record, the court holds that any purported error by the Clerk in the review of the return identification envelopes would apply to, at most, the 215 voters who were not provided with a reasonable period of time to cure the deficiency. HRS §§ 11-106, 11-108(c). The reported vote margin between the candidates is 513 votes in favor of Defendant Lee. Thus, Plaintiffs at Count 2 failed to establish a mistake that would change the outcome of the election. See HRS §§ 11-172, 11-174.5. Accordingly, as to Count 2, the court rules in favor of Defendants and against Plaintiffs.

12. At Count 3, Plaintiffs assert it was an error for the Clerk to withhold the names of the voters with return identification envelopes that had been deemed deficient. We disagree.

13. The court finds the Clerk did not commit an election mistake on November 14, 2022 in refusing to release the names of the voters with deficient return identification envelopes to Plaintiff Ahia.

14. The specific information in question is the information on whether-a-person-voted as identified from a return identification envelope submitted by the voter. We find this information is "voted materials" under HRS § 11-97(b) (2012) and it was not an error for the Clerk to withhold this

11

confidential information from Plaintiff Ahia on November 14, 2022.[3]

15. In support of Count 3 the Plaintiffs cited to Coray v. Ariyoshi, 54 Haw. 254, 506 P.2d 13 (1973). But the holding in Coray is distinguishable from this case. Coray did not address whether the election official (i.e., the government) was obligated to provide the poll watchers with the name of the persons who voted. 54 Haw. at 262, 506 P.2d at 17. To the contrary, in Coray it was the poll watchers who witnessed the election process and gathered this information for their political party. Id. The poll watchers were not given this information (i.e., as to who voted) by the government. Id.; see HRS § 11-77 (Supp. 2019).

16. In sum, the Clerk was correct to not immediately disclose the confidential information. And, a party seeking to compel the disclosure of the confidential voted materials must apply for an order from the court. See HRS § 11-97(b). See e.g., Haw. Const. art. I, § 6, art. II, § 4. Accordingly, the

_____

[3] In this case, the Chief Election Officer explained that the term "voter status" refers to whether a voter is an "active voter" in terms of their voter registration record being in proper order to be able to vote. Dkt. 67:6, ¶ 5; see HRS § 11-97(a). In contrast, and as further explained by the Chief Election Officer, the term "voter status" does not include information on whether a person actually voted. See Dkt. 67:6, ¶ 7. See, e.g., HRS § 11-2(a), (e) (2012) ("The chief election officer shall supervise all state elections" and "shall adopt rules governing elections[.]").

12

court rules in favor of Defendants and against Plaintiffs on Count 3.

17. At Count 4, Plaintiffs claim the lack of administrative rules or unlawful rule making is a type of election error and, as a result, "a correct outcome" of the election contest "cannot be ascertained." Dkt. 1:8-9. We disagree.

18. The court finds that the Chief Election Officer has promulgated rules. See HAR § 3-177-650, et seq. Plaintiffs' claim as to Count 4 is without merit and is not supported by any evidence.

19. Accordingly, the court holds, as a matter of law, that Plaintiffs' Count 4 fails to assert a viable cause to challenge the election contest under HRS §§ 11-172 and 11-174.5. The court rules in favor of Defendants and against Plaintiffs at Count 4.

20. Plaintiffs' claims at Count 5 and Count 6 are based on the Clerk's decision to delay by four-calendar days from November 8, 2022 until November 12, 2022 the mailing of the notice-to-cure to the 215 voters with return identification envelopes that the Clerk identified as deficient.

21. Here, the indisputable evidence is only 215 ballots were subject to the alleged unequal treatment (Count 5) or were not provided due process (Count 6). The final result as

13

reported by the Chief Election Officer is Defendant Lee with 22,733 votes and Plaintiff Ahia with 22,220, representing a vote differential of 513 in favor of Defendant Lee. Based on the record, the court holds that any purported mistake by the Clerk as alleged at Count 5 and Count 6 would not change the outcome of the election. See HRS §§ 11-172, 11-174.5. Accordingly, as to Count 5 and Count 6, the court rules in favor of Defendants and against Plaintiffs.

22. The court issues this decision based on the evidence submitted by the parties and the record before the court. See HRS § 11-174.5(b) (providing "the court shall cause the evidence to be reduced to writing and shall give judgment, stating all findings of fact and of law."). Accordingly, the motions pending before the court are denied as moot.

## JUDGMENT

It is hereby ordered in accordance with HRS § 11-174.5 as follows:

We find that Defendant Alice L. Lee received a majority of the votes cast and has been elected to the office of councilmember for the Wailuku-Waiheʻe-Waikapū seat on the Maui County Council.

The court enters judgment in favor of Defendants and against Plaintiffs as to all claims stated in the complaint.

14

A copy of this judgment shall be served on the Chief Election Officer, who shall sign and deliver to Defendant Alice L. Lee the certificate of election which shall be conclusive of the right of Defendant Alice L. Lee to the office of councilmember for the Wailuku-Waiheʻe-Waikapū seat on the Maui County Council.

DATED: Honolulu, Hawaiʻi, January 20, 2023.

/s/ Mark E. Recktenwald
/s/ Paula A. Nakayama
/s/ Sabrina S. McKenna
/s/ Todd W. Eddins

