ELAYNE M. FUNAKOSHI, Plaintiff, *v.* JEAN KING, her official capacity as Lieutenant Governor; WILFRED MITA, in his official capacity as Clerk of the City and County of Honolulu, State of Hawaii, Defendants

NO. 8884

(ORIGINAL PROCEEDING)

OCTOBER 1, 1982

RICHARDSON, C.J., LUM, NAKAMURA, PADGETT AND HAYASHI, JJ.

*Per Curiam.* Plaintiff Elayne M. Funakoshi brings this original action against Defendants Jean King, in her capacity as Lieutenant Governor and chief elections official of the State of Hawaii, and Wilfred Mita, in his capacity as Clerk of the City and County of Honolulu, seeking an order which would place all four of the Democratic Party nominees in the primary election for the office of State Representative from the Thirty-third Representative District (Waiau-Newtown-Waimano) on the ballot in the general election to be held on November 2, 1982.

Plaintiff was one of four candidates seeking the Democratic nomination for the Thirty-third Representative District seat in the primary election held on September 18, 1982. Intervenor-Defendant Arnold Morgado was the winner in that election, defeating Plaintiff by a margin of eighty votes. The final vote tally was as follows: Arnold Morgado - 1930 votes; Elayne Funakoshi - 1850 votes; Frank Hayashida - 1028 votes; and Donald Masutani - 392 votes. There were no nominees from any other political party seeking election.

Plaintiff alleges in the memorandum in support of her complaint that in a preliminary review she conducted of the polling records, she identified 100 voters who were assigned to the wrong polling location, 80 of whom actually voted in the wrong precinct. Defendants' records place the number of voters who were sent to the wrong polling station as 98. Defendants have determined that of that number, 78 persons actually voted. Plaintiff surmised that the improper assignment of voters was a result of the recent legislative reapportionment plan drawn according to U.S. census maps which caused confusion in the new neighborhoods contained in the Thirty-third District.

Plaintiff seeks relief under HRS § 11-172 (1976) which provides that

> With respect to any election, any candidate, or qualified political party directly interested, or any thirty voters of any election district, may file a complaint in the supreme court. The complaint shall set forth any cause or causes, such as but not limited to, provable fraud, overages, or underages, *that could cause a difference in the election results.* The complaint shall also set forth any reasons for reversing, correcting, or changing the decisions of the precinct officials or the officials at a counting center in an election using the electronic voting system.

(emphasis added).

Defendants Jean King, Wilfred Mita and Intervenor-Defendant Arnold Morgado move to dismiss the complaint on the grounds, *inter alia,* that the complaint failed to state a claim upon which relief could be granted.

The instant action is similar to *Elkins v. Ariyoshi,* 56 Haw. 47, 527 P.2d 236 (1974), where we granted defendants' motion to dismiss, on the basis that the complaint failed to state a claim upon which relief could be granted. In *Elkins,* as in the case here, plaintiff, a Republican nominee for the office of Mayor of the County of Maui, petitioned this Court to declare the results of a primary election null and void and to order a new election because of alleged election irregularities. We interpreted the words "difference in the election results" in HRS § 11-172 to mean "a difference sufficient to overturn the nomination of any particular candidate or candidates in the primary." *Id.* at 49, 527 P.2d at 237. We found in *Elkins* that "[n]either in the complaint nor in oral argument have the plaintiffs shown that the specific acts and conduct of which they complain would have had the effect of changing the results of the primary election conducted in the County of Maui on October 5, 1974." *Id.*

In the instant case, plaintiff has also failed to state a claim upon which relief could be granted. The relief which plaintiff seeks, that of a new election, cannot be given under the present statute pertaining to primary election contests, HRS § 11-173.5(b) (Supp. 1981), which provides as follows:

> In primary and special primary election contests the court shall

hear the contest in a summary manner and at the hearing the court shall cause the evidence to be reduced to writing and shall not later than 4:30 p.m. on the fourth day after the return give judgment fully stating all findings of fact and of law. *The judgment shall decide what candidate was nominated or elected, as the case may be, in the manner presented by the petition, and a certified copy of the judgment shall forthwith be served on the chief election officer or the county clerk, as the case may be, who shall place the name of the candidate declared to be nominated on the ballot for the forthcoming general or special general election.* The judgment shall be conclusive of the right of the candidate so declared to be nominated; provided that this subsection shall not operate to amend or repeal section 12-41.

(emphasis added).

The only statutory relief to which plaintiff is entitled under HRS § 11-173.5(b) would be to have this Court declare the name of the candidate to be nominated or elected. HRS § 11-173.5(b) does not provide for a judgment that would invalidate the primary election and allow a new election. The legislature only provided for this extraordinary remedy in its statutory provisions pertaining to general, special general and special elections. *Compare* HRS § 11-173.5(b) (contests for cause in primary and special primary elections) *with* HRS § 11-174.5(b) (Supp. 1981) (contests for cause in general, special general, and special elections) which provides in relevant part as follows:

At the hearing, the court shall cause the evidence to be reduced to writing and shall give judgment, stating all findings of fact and of law. *The judgment may invalidate the general, special general, or special election on the grounds that a correct result cannot be ascertained because of a mistake or fraud on the part of the precinct officials; or decide that a certain candidate, or certain candidates, received a majority or plurality of votes cast and were elected. If the judgment should be that the general, special general, or special election was invalid, a certified copy thereof shall be filed with the governor, and he shall duly call a new election to be held not later than on the sixtieth day after the judgment is filed.* If the court shall decide which candidate or candidates have been elected, a copy of that judgment shall be served on the chief election officer or county clerk, who shall sign and deliver to the candidate or candidates certificates of election, and the same shall

be conclusive of the right of the candidate or candidates to the offices.

(emphasis added).

By the omission of language providing for the invalidation of an election and the allowance of a new election in HRS § 11-173.5(b), the legislature clearly intended that the only remedy that could be given for primary election irregularities was the statutory remedy of having this Court decide which candidate was nominated or elected.

Plaintiff's complaint and its supporting material do not provide sufficient grounds upon which we can grant even the statutory relief provided in HRS § 11-173.5(b). The record as it now exists is insufficient to compel us to place plaintiff's name on the ballot for the forthcoming general election rather than the name of the winning candidate, Intervenor-Defendant Morgado.

Even, however, if this Court were able to provide plaintiff with the type of relief she requests, namely, invalidating the primary election, plaintiff has still failed to produce sufficient evidence to demonstrate that the irregularities complained of could have caused a difference in the election results.

The statutory provisions limiting the remedy available in primary election contests were first promulgated in Act 226, § 49E, 1925 Hawaii Sess. Laws 272, 273. Prior to Act 226, the statute pertaining to election contests, Act 39, § 46, 1905 Hawaii Sess. Laws 44, 63-64, was similar in language to the present statutory provisions pertaining to general election contests. The 1905 statute provided that the court could either invalidate the election and allow a new election or decide that a certain candidate was elected.

In *Brown v. Iaukea,* 18 Haw. 131 (1906), the Republican candidate for sheriff of the County of Honolulu brought suit under the above provisions claiming that he was the winner of the general election in which the Democratic candidate won by a majority of only fourteen votes. The petitioner in *Brown* alleged that 220 votes cast in his favor were not counted while 160 illegal votes were counted for his opponent and but for these irregularities, he would have won by a margin of more than 350 votes. The Court in *Brown* took the position that "the statute did not permit a recount as such or a mere fishing expedition undertaken in the hope that in an examination of all the ballots enough might be discovered to change the result." *Id.* at 133. The Court held that the petitioner must "show that he had

actual information of mistakes or errors sufficient to change the result." *Id.* Finding that the petitioner failed to meet his burden of proving that the result would have been changed, the Court declared petitioner's opponent the winner of the election.

In *Kulike v. Fern,* 19 Haw. 278 (1909), decided under Act 118, § 62, 1907 Hawaii Sess. Laws 200, 219, identical to the 1905 statutory provisions, qualified voters contested an election alleging that 46 votes legally cast for John Lane, a candidate for mayor, had not been counted while election officials counted 157 illegally cast votes for Lane's opponent, Joseph Fern. Petitioners alleged that if all the votes legally cast for Lane had been properly counted and only the legal votes for Fern counted, Lane would have received a majority of 125 votes. Petitioners raised several election irregularities, including allegations that in one precinct twenty persons voted after the polls should have been closed, that a tally clerk had been unlawfully allowed to remain in the polling place, and that by conversing in Chinese, the clerk influenced Chinese voters. The Court held that

It does not appear that Crawford [the tally clerk] was within the balloting compartment . . . . There is not enough alleged in regard to this matter or in the alleged attempt of Crawford to influence Chinese voters to indicate a change in the result, or in invalidation of, the election.

The allegation in regard to twenty persons voting after five o'clock was also insufficient in the absence of allegation of circumstances rendering it probable, prima facie, that sufficient of the alleged illegal votes were cast for Fern to invalidate or change the result of the election.

*Id.* at 288.

As in *Brown* and *Kulike,* the evidence in the instant case is insufficient to support a finding that the misassignments would have invalidated or changed the results of the election. Plaintiff attaches to her memorandum of law, the affidavits of two voters who state that their address was incorrectly listed on the polling books. Plaintiff also attaches the affidavits of five registered voters who claim that they did not vote in the primary election because they could not vote for Plaintiff. The record, even with these affidavits, is insufficient to prove that these mistakes would have had the effect of overcoming the eighty-vote margin of the successful candidate, Intervenor-Defendant Arnold Morgado.

Accordingly, defendants' motion to dismiss is granted.

*Mark S. Davis* and *Stanley E. Levin (Davis & Levin* of counsel) for plaintiff.

*Francis Paul Keeno,* Deputy Attorney General, for defendant Jean King.

*Wesley F. Fong,* Deputy Corporation Counsel, for defendant Wilfred Mita.

*Yukio Naito (Shim, Sigal, Tam & Naito* of counsel) for intervenor-defendant Arnold T. Morgado.