**Electronically Filed
Supreme Court
SCEC-14-0001317
24-DEC-2014
09:30 AM**

SCEC-14-0001317

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

_____

THOMAS WATERS a/k/a TOMMY WATERS, Plaintiff,

vs.

SCOTT NAGO, Chief Election Officer; STATE OF HAWAII OFFICE OF
ELECTIONS; and BERNICE K.N. MAU, in her official capacity as the
City Clerk of the City and County of Honolulu, Defendants.

_____

ORIGINAL PROCEEDING

<u>FINDINGS OF FACT, CONCLUSIONS OF LAW, and JUDGMENT</u>
(By: Recktenwald, C.J., Pollack, and Wilson, JJ., Intermediate
Court of Appeals Chief Judge Nakamura, in place of Nakayama, J.,
recused, and Intermediate Court of Appeals Associate Judge Foley,
in place of McKenna, J., recused)

Upon consideration of (1) the first amended complaint
contesting the second special election for councilmember for
District IV (Waikiki-East Honolulu), City and County of Honolulu,
filed by Plaintiff Thomas Waters, a/k/a Tommy Waters ("Waters"),
(2) the answer to the first amended complaint filed by Defendant
Bernice K.N. Mau ("Mau"), in her official capacity as the City
Clerk of the City and County of Honolulu, (3) the motion to
dismiss the first amended complaint or, in the alternative, for

summary judgment filed by Defendants Scott Nago ("Nago"), Chief Election Officer, and the Office of Elections for the State of Hawaiʻi ("Office of Elections"), (4) the answer to the first amended complaint and the joinder to the motion to dismiss the first amended complaint or, in the alternative, for summary judgment filed by Intervenor Trevor R. Ozawa ("Ozawa"), and (5) the opposition to the motion to dismiss the first amended complaint or, in the alternative, for summary judgment, filed by Plaintiff Waters, and in accordance with HRS §§ 11-172 (2009) and 11-174.5(b) (2009), we set forth the following findings of fact and conclusions of law and enter the following judgment.

<u>FINDINGS OF FACT</u>

The November 4, 2014 Second Special Election
<u>for the District IV City Council Seat</u>

1. On November 4, 2014, in conjunction with the State of Hawaiʻi's general election, the City and County of Honolulu held its nonpartisan second special election for city councilmember for District IV.

2. Waters and Ozawa were the nonpartisan candidates for the District IV councilmember seat.

3. On November 5, 2014, at 1:26 a.m., the Office of Elections generated a "Final Summary Report" for the elections. According to Nago and the Office of Elections, the report reflected the results of the November 4, 2014 election subject to any audit of the poll books, record books, and the reconciliation

2

reports compiled by the county clerks.  At that time, the results of the District IV race were reported as follows:

| | | |
|---|---|---|
| Trevor Ozawa: | 16,371 | (44.1%) |
| Tommy Waters: | 16,324 | (43.9%) |
| Blank Votes: | 4,451 | (12.0%) |
| Over Votes: | 16 | (0.0%) |

4.   On November 18, 2014, at 5:11 p.m., following a post-election audit and the reconciliation process, the Office of Elections generated a final "Final Summary Report."  The results of the District IV race were reported as follows:

| | | |
|---|---|---|
| Trevor Ozawa: | 16,374 | (44.0%) |
| Tommy Waters: | 16,333 | (43.9%) |
| Blank Votes: | 4,455 | (12.0%) |
| Over Votes: | 16 | (0.0%) |

5.   The difference in the two reports was the addition of 16 ballots to the final tally, which included 4 provisional ballots that were approved for counting, 10 absentee mail ballots for which the signatures on the return envelopes had been confirmed, and 2 federal write-in absentee ballots.

6.   The difference in the votes between Waters and Ozawa was 41 votes.

Post-Election Communications

7.   On November 10, 2014, Waters' counsel, James Kawashima ("Kawashima"), sent a letter to the Office of Elections requesting information about the second special election.  He asked the Office of Elections for the margin of error of the voting system used.  He also asked the Office of Elections to

3

take the following action: (1) verify and investigate the possible errors with the overages and underages; (2) investigate the 4,451 blank votes for accuracy and validity; and (3) review the 16 overvotes in accordance with operating procedure. Kawashima asked the Office of Elections to "apply every test or process available to you in making sure the result was accurate and valid."

8. Three days later, on November 13, 2014, Kawashima sent a follow up letter to the Office of Elections. He informed the Office of Elections of the upcoming deadline to take legal action to challenge the election and asked for a status regarding a response to the November 10, 2014 letter. He also informed the Office of Elections that he was ready and available to meet and discuss the issues.

9. On November 14, 2014, Nago sent Kawashima a letter acknowledging the November 10 and 13, 2014 letters. Nago informed Kawashima that the Office of Elections was in the process of completing its post-election processes before it could finalize the election results and that it would forward a copy of the final summary report along with the overages and underages related to the districts/precincts associated with the District IV contest at the conclusion of the process.

10. On November 19, 2014, Nago sent Kawashima a final statewide summary and attached a matrix of the overages and underages for each District IV district/precinct.

11. The following day, on November 20, 2014, the Office of Elections sent Kawashima an updated version of the overages and underages for the District IV districts/precincts.

12. The updated chart reflects an overage total of 11 and an underage total of 39.

The Election Contest

13. On November 24, 2014, Waters timely filed a complaint contesting the election results for the District IV city council race. The following day, on November 25, 2014, Waters filed a first amended complaint.

14. The first amended complaint asserts two counts for relief:

- **Count I** – Waters alleges that Nago, the Office of Elections, and Mau "miscounted 74 ballots cast as being totally blank in regards to voting in the District 4 election, when those 74 ballots had actually been validly cast for either candidate Waters or candidate Ozawa, with said miscounting being a cause, within the meaning of HRS, § 11-172, that could cause a difference in the outcome of the District 4 election."

- **Count II** – Waters alleges that Nago, the Office of Elections, and Mau mishandled the overages and underages by intermingling 50 ballots (39 underages and 11 overages) with valid ballots that had been voted and counted when they should not have been counted or

5

issued and voted and not yet counted when they were supposed to have been counted.

15. Waters attached a copy of the "Report of the Election Oversight Committee on the Audit of the 1998 General Election" (the "1998 Audit").

16. The 1998 Audit reviewed the electronic voting system used in the 1998 election. The electronic voting system used to calculate the votes in the 1998 election was from Electronic Systems & Software ("ES&S").

17. In the first amended complaint, Waters asks the court to order a manual recount of the 4,455 blank votes or, in the alternative, order a new special election for District IV by mail-in ballots only. He also asks the court to award him attorneys' fees and costs, order the Office of Elections to answer the questions he posed in previous correspondence, provide him access to the election results and the instruments used in tallying the final results, and permit minimal discovery.

18. On December 5, 2014, Mau filed an answer to the first amended complaint and asks the court to dismiss the first amended complaint. Mau denies any wrongdoing, improper conduct, or irregularities with respect to the second special election. Mau argues that Waters' reliance on the 1998 Audit is misplaced because it was an audit of election results of a different election that used voting machines different from the ones used in the 2014 election.

6

19. On December 5, 2014, Nago and the Office of Elections moved to dismiss the first amended complaint or, in the alternative, for summary judgment. They argue that Waters' conclusion that 74 of the blank ballots are valid is hypothetical and purely speculative because Waters is relying on an audit of a different election involving a different voting system. They also argue that the addition of the 16 ballots that were submitted to the Office of Elections by Mau were properly part of the post-election process. They further argue that the distribution of the overages and underages did not demonstrate fraud or mistakes by the precinct officials to establish that the election results were incorrect.

20. Attached to the motion to dismiss or, in the alternative, for summary judgment, are declarations from Nago and Rich Geppert ("Geppert"), one of the professional services managers for Hart Intercivic, Inc. ("Hart Intercivic"), the vendor of the electronic voting machines used in the 2014 election.

21. The voting system used in the 2014 election has been used by the Office of Elections since 2008, when it replaced the ES&S voting system that was first used in the 1998 election when the Office of Elections implemented an electronic voting system.

22. Geppert explains that the Hart Intercivic system uses three main components to record votes -- (1) eSlate - direct recording electronic voting unit with disabled access unit to assist voters with disabilities; (2) eScan - digital ballot imaging precinct counter in which a voter inserts his or her ballot to be counted and deposited; and (3) Ballot Now - high speed scanners that scan absentee ballots for counting. In calculating absentee ballots, Ballot Now uses commercial full-sheet scanning technology to record a full digital image of the voted ballot. After the scanner converts the paper ballot into an electronic image, Ballot Now analyzes marks at a resolution of 200 dots per inch. The software counts the number of pixels inside each option box in the digital image. According to Geppert, the Ballot Now digital scanning system "has been used in hundreds, if not thousands, of elections and has accurately processed millions of votes."

23. In his declaration, Nago explains that the legislature vested authority in the Chief Election Officer to adopt a voting system and to define what marks will constitute a vote for purposes of utilizing the adopted system, which he notes has been done by administrative rule. Nago cites HRS §§ 16-1, 16-2, 16-41, and 16-42, and HAR §§ 3-172-83 and 3-172-85 to support his explanation. Nago also states that the law requires that the system must be subject to inspection, audit, and testing by qualified observers before and after an election. Nago

8

further declares that the voting system used during the 2014 primary and general election was from Hart Intercivic and that it was inspected and tested by official observers in preparation for use in the general election during absentee walk, polling place, and absentee mail voting.

24. Nago states that "[n]o errors in the counting of votes by the voting system were found for the 2014 general election."

25. In his declaration, Nago further explains that official observers were present at the State Capitol on the November 4, 2014 election day to observe the counting of ballots, and on November 18, 2014, to observe the counting of additional ballots at the conclusion of the post-election review process. He states that on the night of the general election, the official observers requested the manual audit team, which audits the computer generated results to ensure the accuracy and integrity of the ballot counting program, to supplement its audit with two of the District IV precincts (D/P 17-03 and 18-03) and that after conducting the audit, the manual audit team certified that the computer results of the audited precincts were accurate.

26. Nago describes overages as follows:

> An overage is defined as there being more ballots counted than the poll book indicates. HRS § 11-153. Specifically, we determine overages by counting the signatures in the poll book associated with an issued ballot and comparing it to the amount of ballots counted by the voting machines at the polling place. For purposes of absentee mail, if there are more ballots counted than the number of

9

returned ballot envelopes that were received and whose signatures had been matched against the signatures on file, then we consider this to be an overage. In regard to absentee walk sites, if there are more ballots counted than the amount of verified absentee ballot applications completed by the voters at the site, then the difference is considered an overage.

27. Nago describes underages as follows:

An underage is defined as there being less ballots counted as cast than the poll book indicates. HRS § 11-153. Likewise, for absentee mail and absentee walk there are less ballots counted than the amount of validated absentee ballot applications at an absentee walk site or the amount of returned ballot envelopes that were received and whose signatures had been matched against the signatures on file.

28. Nago also provides examples of overages and underages. For overages, Nago provides the following example:

26. For example, a poll book could have the names of 200 voters, with 100 who have a signature by their name in conjunction with the issuance of their ballot, and 101 ballots that have been counted by the voting machines. In this situation, the overage can result from the voter not having signed the poll book. In other words, 101 voters asked for and received a ballot, while only 100 of them signed the poll book, and then all 101 voters had their ballot counted by the voting machine. The end result is an overage of 1 ballot, with all ballots having been cast by qualified voters.

For underages, Nago indicates that "[a]n underage may occur when a voter is issued a ballot and subsequently decides to walk away without voting, due to a long line, or otherwise not wishing to wait to cast his or her ballot."

29. Nago states that the distribution of overages and underages among the seventeen district/precincts for District IV "shows no pattern of fraud or mistake from which it could be concluded that the correct result of the election had not been ascertained."

10

30. Nago declares that he is "not aware of any issues or problems with the accuracy of the vote counting system, the handling of ballots, or any other matters that would impact the integrity of the November 4, 2014 general election results of Council District IV."

31. Nago states that even if a recount was ordered, the Office of Elections is required to follow the same set of rules in counting the ballots as used on the general election day and under no circumstances is a different set of rules or a different standard used after an election to count ballots.

32. On December 12, 2014, Waters filed an opposition to the motion to dismiss or, in the alternative, for summary judgment. He clarifies that, at this time, all he is seeking is for the court to order the Office of Elections to answer the questions he raised in a series of correspondence about the election process, which he alleges the Office of Elections ignored, in order for him to determine whether sufficient error exists to warrant further review or a new election.

33. Waters contends that the Office of Elections has ignored his efforts to get information, that there is a question as to whether some of the blank ballots were correctly marked to count as a valid vote, and that if procedures were properly followed, there would not be any discrepancies between the poll book counts and the actual ballots cast at a precinct to create an overage or underage.

34.  Waters explains that his counsel attempted to resolve this matter without going further and scheduled a meeting to obtain the sought-after information.  The meeting was scheduled for December 8, 2014, but was later cancelled.  Shortly thereafter, Waters received a copy of the motion to dismiss or, in the alternative, motion for summary judgment.

35.  Waters questions Nago and the Office of Elections' failure to attest to the accuracy and reliability of the eSlate and eScan systems used on election day.

36.  Waters submits e-mail correspondence between Kawashima and Valri Kunimoto ("Kunimoto"), counsel for Nago and the Office of Elections, which was dated after Nago and the Office of Elections filed the motion to dismiss or, in the alternative, for summary judgment in this election contest.

37.  In the e-mail, Kawashima informs Kunimoto that he reviewed Nago's declaration and asks Kunimoto if Nago would sign a declaration with the following statements:

- that the voting system is 100% accurate;

- that nothing more can be done to assure that there may be errors in the system that may make a 41 vote difference in the final tally;

- that if the vote had resulted in a one vote difference, nothing more than was done would have been done to confirm the accuracy of the results; and

- that there is no human decision-making that is part of the process as it may relate to overages, underages, blank ballots, and spoiled ballots.

12

38. Kunimoto responded that "Mr. Nago stands on his declaration which has already been submitted to the Court and will not submit a supplemental declaration with the statements you proposed. Thank you for your consideration."

39. On December 15, 2014, Ozawa, who was permitted to intervene on December 10, 2014, filed an answer to the first amended complaint and also filed a joinder to the motion to dismiss or, in the alternative, for summary judgment. Ozawa argues that Waters' reliance on the 1998 Audit is misplaced and has no bearing on the 2014 election. He also argues that Waters fails to demonstrate that the overages and underages would cause a difference in the election results and that, ordering a recount or new election based on overages and underages "would open the floodgates for future baseless election challenges because it would require [the Office of Elections] to recount every election where overages or underages occur, particularly in cases where those numbers come close to the margin of win."

CONCLUSIONS OF LAW

1. An election contest is instituted by filing a complaint in the supreme court "set[ting] forth any cause or causes, such as but not limited to, provable fraud, overages, or underages, that could cause a difference in the election results." HRS § 11-172.

2. A complaint challenging the results of a special

13

general election pursuant to HRS § 11-172 fails to state a claim unless the plaintiff demonstrates errors, mistakes or irregularities that would change the outcome of the election. Tataii v. Cronin, 119 Hawaiʻi 337, 339, 198 P.3d 124, 126 (2008); Akaka v. Yoshina, 84 Hawaiʻi 383, 387, 935 P.2d 98, 102 (1997); Funakoshi v. King, 65 Haw. 312, 317, 651 P.2d 912, 915 (1982); Elkins v. Ariyoshi, 56 Haw. 47, 48, 527 P.2d 236, 237 (1974).

3.  A plaintiff challenging a special general election must show that he or she has actual information of mistakes or errors sufficient to change the election result.  Tataii, 119 Hawaiʻi at 339, 198 P.3d at 126; Akaka, 84 Hawaiʻi at 388, 935 P.2d at 103; Funakoshi, 65 Haw. at 316-317, 651 P.2d at 915.

4.  Sufficient evidence requires something more than a "mere fishing expedition undertaken in the hope that in an examination of all the ballots enough might be discovered to change the result."  Brown v. Iaukea, 18 Haw. 131, 133 (1906).

5.  "In the absence of facts showing that irregularities exceed the reported margin between the candidates, the complaint is legally insufficient because, even if its truth were assumed, the result of the election would not be affected." Tataii, 119 Hawaiʻi at 339-40, 198 P.3d at 126-27.

6.  "An election contest cannot be based upon mere belief or indefinite information."  Id.

7.  When reviewing a motion to dismiss a complaint for

14

failure to state a claim upon which relief can be granted, the court must accept the plaintiff's allegations as true and view them in the light most favorable to him or her; dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. AFL Hotel & Restaurant Workers Health & Welfare Trust Fund v. Bosque, 110 Hawai'i 318, 321, 132 P.3d 1229, 1232 (2006).

8. Conclusory allegations and unwarranted inferences are not sufficient to defeat a motion to dismiss. Kealoha v. Machado, 131 Hawai'i 62, 74, 315 P.3d 213, 225 (2013).

9. The court's consideration of matters outside the pleadings converts a motion to dismiss into one for summary judgment. Buscher v. Boning, 114 Hawai'i 202, 212, 159 P.3d 814, 824 (2007).

10. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Silva v. City and County of Honolulu, 115 Hawai'i 1, 6, 165 P.2d 247, 252 (2007).

11. In Count I, Waters alleges that 74 blank votes are likely valid votes and may cause a difference in the vote distribution for his race. In reaching this conclusion, Waters relies upon the statements contained in the 1998 Audit and concludes that 0.2% of all blank votes are actually valid votes. The 1998 election, however, involved a different voting system

15

with a different vendor. Consequently, the data contained in the 1998 Audit provides no actual information of mistakes or errors with regard to the November 4, 2014 second special election for the city council race that would change the election result.

12. In Count II, Waters alleges that the overages and underages were "mishandled." However, Nago indicates that the existence of overages and underages occurs in the ordinary course of an election. After reviewing the distribution of overages and underages across the District IV precincts, and considering that a manual audit of two of the District IV precincts confirmed the accuracy of the computer results on the night of the general election, Nago and the Office of Elections conclude that "there is nothing in the distribution of the overages or underages that reflects any mistakes or pattern of fraud" to demonstrate irregularities in the election. Waters has not presented specific evidence or actual information of mistakes or errors to dispute this conclusion such that it would change the election result.

13. In his opposition to the motion to dismiss or, in the alternative, for summary judgment, Waters indicates that his basis for filing the election contest was to "satisfy himself" that there was no fraud, mistake, or irregularities. In accordance with seeking to obtain information to "satisfy himself" that the election was valid and accurate, Waters requests the court's assistance to order the Office of Elections

16

to cooperate with him in order to answer reasonable questions and to view non-confidential elements of the process.

14. Waters, however, does not explain how the sought-after documents or information demonstrates fraud, irregularities, or mistakes sufficient to change the election results, instead premising his argument on the absence of information that he was provided.

15. Therefore, Waters has not shown in his pleadings submitted to this court actual information of errors, mistakes, or irregularities sufficient to change the outcome of the election.

<u>JUDGMENT</u>

Based upon the foregoing findings of fact and conclusions of law, judgment is entered in favor of Nago, the Office of Elections, and Mau and against Waters. Ozawa received the majority of the votes cast in the November 4, 2014 second special election and has been elected councilmember for District IV, City and County of Honolulu.

A copy of this judgment shall be served on Nago and Mau who shall act in accordance with the requirements set forth in HRS § 11-174.5(b) ("If the court shall decide which candidate or candidates have been elected, a copy of that judgment shall be

17

served on the chief election officer or county clerk, who shall sign and deliver to the candidate or candidates certificates of election, and the same shall be conclusive of the right of the candidate or candidates to the offices.").

DATED: Honolulu, Hawaiʻi, December 24, 2014.

/s/ Mark E. Recktenwald

/s/ Richard W. Pollack

/s/ Michael D. Wilson

/s/ Craig H. Nakamura

/s/ Daniel R. Foley

