**Electronically Filed
Supreme Court
SCEC-22-0000513
06-SEP-2022
08:18 AM
Dkt. 14 FFCL**

SCEC-22-0000513

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---

CARLOTTA OQUENDO, Plaintiff,

vs.

STATE OF HAWAIʻI, OFFICE OF ELECTIONS, Defendant.

---

ORIGINAL PROCEEDING

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT
(By: Recktenwald, C.J., Nakayama, McKenna, Wilson, and Eddins, JJ.)

On August 25, 2022 Plaintiff Carlotta Oquendo, also known as Cherie Kuualoha Oquendo (Oquendo), filed a letter which we construe as an election complaint. On August 30, 2022 Defendant State of Hawaiʻi Office of Elections (Office of Elections) filed a motion to dismiss. Upon consideration of the complaint and motion to dismiss, and having heard this matter without oral argument, we enter the following findings of fact, conclusions of law, and judgment.

FINDINGS OF FACT

1. Oquendo was one of three Primary Election Republican Party candidates in the House District 45 race.

2. The 2022 Primary Election was on August 13, 2022.

3. Following a mandatory recount, the election result for this race was, as follows:

```
Wilbur, Tiana                 403
Oquendo, Cherie Kuualoha      395
Aldeguer, Maysana A.          347
Blank votes                   165
```

4.    The election result was later updated by a final printout published on August 25, 2022, with the following result that included the last ballots validated by the City Clerk for the City and County of Honolulu:

```
Wilbur, Tiana (Wilbur)        411
Oquendo, Cherie Kuualoha      406
Aldeguer, Maysana A.          353
Blank votes                   169
Over votes                      1
```

5.    On the same day, August 25, 2022, Oquendo filed a complaint under Hawaiʻi Revised Statutes (HRS) § 11-172 (Supp. 2021), which requests the following relief:

(a)    That an order be issued requiring a manual recount of the 2022 Republican Party House District 45 Primary Election race; and

(b)    An order requiring certain requests be granted "to restore public confidence and assurances regarding the integrity of Hawaii elections and reduce vulnerability to election and voter fraud" that include maintenance of the voter rolls, voter education, certain ballot handling procedures, an adequate elections budget, increased access to voting to increase voter participation, and preserving all elections records from the "2020 General Election" beyond the federally mandated twenty-two month retention period to improve transparency and access to public records.

6. Oquendo asserts a lack of transparency during the mandatory recount process, lack of resolution on certain election integrity inquiries, and the final ballot counts support the requested relief.

7. With regard to Oquendo's assertion that there was a lack of transparency during the mandatory recount process, Oquendo recounts observations and interactions with the Office of Elections during the mandatory recount process, including the lack of responses from the Office of Elections during the mandatory recount process.

8. With regard to the concern about the lack of resolution on certain election integrity inquiries, Oquendo asserts there were many deficiencies concerning: (a) a Manual Audit Certification that was raised regarding the 2020 General Election; (b) cybersecurity threats from foreign and other non-state threats to alter the election results to conform to their interests; (c) maintenance of the voter registration rolls in light of a "specific case of a registered voter" in the 2020 General Election; and (d) various aspects with elections by mail.

9. With regard to the assertion that a final ballot count supports the requested relief, Oquendo asserts a manual recount could alter the outcome because the difference between Oquendo and Wilbur is only five votes. She also points to a credit data file from the City and County of Honolulu Elections Office that states there were 34,559 ballots received on August 14, 2022, that "could have met the deadline for receipt by 7

3

p.m., Aug[ust] 13, 2022," if receipt of these 34,559 ballots were recorded in Greenwich Mean Time (GMT) because Hawaiʻi standard time is ten hours behind GMT.

10. The Office of Elections asserts that the complaint should be dismissed with prejudice because it's untimely and fails to state a claim upon which relief may be granted.

CONCLUSIONS OF LAW

1. HRS § 11-173.5(a) (2009 & Supp. 2021) provides in pertinent part that "a complaint for a contest for cause that arises from a mandatory recount pursuant to section 11-158 shall be filed no later than 4:30 p.m. on the third calendar day following the public announcement of the results of the mandatory recount pursuant to section 11-158(c)."

2. The mandatory recount in this race resulted in a difference of eight votes between Wilbur and Oquendo.

3. However, Oquendo's complaint clearly refers to a five vote difference between Wilbur and Oquendo, which is the result shown by the August 25, 2022 final printout.

4. As such, Oquendo's complaint does not "arise[] from a mandatory recount pursuant to [HRS] section 11-158[,]" and, thus, the time limit in which to file a primary election complaint from a mandatory recount does not apply to Oquendo's complaint. See HRS § 11-173.5(a).

5. Oquendo filed the complaint on August 25, 2022, or before the August 26, 2022 deadline for other primary election complaints. See HRS § 11-173.5(a) (requiring the complaint to be

4

filed no later than 4:30 p.m. on the thirteenth day after a primary election).

6. Oquendo's complaint is thus timely.

7. When reviewing a request to dismiss a complaint, the court's review "is based on the contents of the complaint, the allegations of which [the court] accept[s] as true and construe[s] in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Casumpang v. ILWU, Local 142, 94 Hawaiʻi 330, 337, 13 P.3d 1235, 1242 (2000) (quotation marks and citation omitted).

8. When considering a request to dismiss a complaint, the court need not accept conclusory or formulaic recitations on the legal effects of the events alleged. Kealoha v. Machado, 131 Hawaiʻi 62, 74, 315 P.3d 213, 225 (2013).

9. A complaint challenging the results of a primary election fails to state a claim unless the plaintiff demonstrates errors, mistakes, or irregularities that would change the outcome of the election. See HRS § 11-172 (Supp. 2021); Funakoshi v. King, 65 Haw. 312, 317, 651 P.2d 912, 915 (1982).

10. A plaintiff challenging a primary election must show that he or she has actual information of mistakes or errors sufficient to change the election result. Funakoshi, 65 Haw. at 316-17, 651 P.2d at 915.

11. HRS § 11-172 provides in relevant part: "With

5

respect to any election, any candidate, or qualified political party directly interested, or any thirty voters of any election district, may file a complaint in the supreme court. The complaint shall set forth any cause or causes, such as but not limited to, provable fraud, overages, or underages, that could cause a difference in the election results."

12. In order for a primary election complaint to be legally sufficient, it must "show[] that the specific acts and conduct . . . complain[ed of] would have had the effect of changing the results of the primary election[.]" Elkins v. Ariyoshi, 56 Haw. 47, 49, 527 P.2d 236, 237 (1974); see Funakoshi, 65 Haw. at 314, 651 P.2d at 915 ("'[D]ifference in the election results' in HRS § 11-172 . . . mean[s] 'a difference sufficient to overturn the nomination of any particular candidate or candidates in the primary.'" (Quoting Elkins, 56 Haw. at 49, 527 P.2d at 237)).

13. HRS § 11-173.5 sets forth, among other matters, time requirements for primary election contests to be filed in the supreme court, as well as the remedy allowed to be provided in primary election contests.

14. The remedy provided by HRS § 11-173.5(b) of having the court decide which candidate was nominated or elected is the only remedy that can be given in primary election contests. Funakoshi, 65 Haw. at 315-16, 651 P.2d at 914. In other words, the "only statutory relief to which plaintiff is entitled under HRS § 11-173.5(b) would be to have this Court declare the name of

6

the candidate to be nominated or elected." Id. at 315, 651 P.2d at 914.

15. A complaint challenging the results of a primary election fails to state a claim unless the plaintiff demonstrates errors, mistakes, or irregularities that would change the outcome of the election. See HRS § 11-172; Funakoshi, 65 Haw. at 317, 651 P.2d at 915.

16. Taking Oquendo's allegations as true and viewing them in the light most favorable to Oquendo, ordering a manual recount of the ballots cast in the Republican Primary Election for the House District 45 seat and granting certain requests "to restore public confidence and assurances regarding the integrity of Hawaii elections and reduce vulnerability to election and voter fraud" are not authorized by HRS § 11-173.5(b). See Funakoshi, 65 Haw. at 315-16, 651 P.2d at 914.

17. Oquendo's complaint thus fails to state a claim upon which relief may be granted.

### JUDGMENT

Based upon the foregoing findings of fact and conclusions of law, judgment is entered dismissing the complaint.

DATED: Honolulu, Hawaiʻi, September 6, 2022.

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins



7