**Electronically Filed
Supreme Court
SCEC-22-0000518
06-SEP-2022
08:43 AM
Dkt. 10 FFCL**

SCEC-22-0000518

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

JAY DEE PENN, Plaintiff,

vs.

STATE OF HAWAI'I, OFFICE OF ELECTIONS, Defendant.

ORIGINAL PROCEEDING

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT
(By: Recktenwald, C.J., Nakayama, McKenna, Wilson, and Eddins, JJ.)

On August 26, 2022, Plaintiff Jay Dee Penn, also known as BJ Penn (Penn), filed an Election Complaint (complaint). On August 31, 2022, Defendant State of Hawai'i Office of Elections (Office of Elections) filed a motion to dismiss or, in the alternative, for summary judgment. Upon consideration of the complaint and motion to dismiss, and having heard this matter without oral argument, we enter the following findings of fact, conclusions of law, and judgment.

FINDINGS OF FACT

1.    Penn filed a complaint on August 26, 2022.

2.    Penn asserts inaccurate reporting, violations of House Bill No. 452 in the 2013 Legislative Session (relating to election fraud), ballot irregularities, inadequate ballot

security, and voter discrimination and suppression, all require the remedies sought.  In asserting as such, Penn "avers a responsibility to participate in the validation of the primary election results, in the pursuit of ensuring accuracy and transparency."

3.   With regard to inaccurate reporting, Penn appears to assert that the variations between the different statewide summary reports of election results, which are issued by the Office of Elections, reflect that the media's reporting of the primary election winners is inaccurate.

4.   With regard to House Bill No. 452 in the 2013 Legislative Session that amended Hawaiʻi Revised Statutes (HRS) § 19-3 (concerning election frauds), Penn appears to assert that the media's alleged inaccurate reporting, together with the alleged lack of adequate security measures at ballot drop boxes and counting centers, "possibly discouraged voters from participating due to the many concerns related to security and might have even contributed to fraud and inaccurate reporting related to mail-in ballots."

5.   With regard to ballot irregularities, Penn appears to assert that "opportunities for election fraud" were "enhance[d]" because (a) submission of mail-in ballots do not require proof of identity or residency, (b) the ballot design does not comply with HRS §§ 12-21 (2009) (concerning official party ballots) and -31 (2009) (concerning selection of party ballot and voting in a primary or special primary election), (c)

2

there "is no verbiage about the guidelines, rules, and transfer requirements for mail-in ballots" within the Hawai'i Administrative Rules (HAR) applicable to the Office of Elections and thus "no way to ensure" the mail-in ballots were properly handled, counted, and safely stored without any tampering, and (d) there is a lack of clearly defined rules to measure and enforce accountability within the Office of Elections.

6. With regard to inadequate ballot security, Penn, through witness statements, describes several instances that allegedly reflect an increased risk or likelihood of security breaches at ballot counting centers, voter service centers, and ballot deposit sites.

7. With regard to voter discrimination and suppression, Penn appears to assert that in-person voters "were met with various challenges" that mail-in voters were not subjected to, such as providing a form of identification at the time of ballot submission. Penn alleges that the in-person "verification process appeared to many to be discriminatory and enforced with the intention to discourage residents from submitting their votes, also known as, voter suppression." Penn asserts that the in-person identification verification process took such a long time that there were long lines at in-person voting sites that discouraged people from voting and allegedly "caused some residents to pass out due to the extreme heat."

8. In closing, Penn asserts his complaint sets forth "reasons for reversing, correcting, or changing the decisions of

3

the voter service center officials or the officials at a counting center in an election using the electronic voting system" pursuant to HRS § 11-172 (Supp. 2021) because:

> The potential impact of the false messaging, and the apparent and potential lack of protocols for security and monitoring at the Ballot Drop Boxes and at the Counting Center where ballots are tabulated, enhances the risk for voter fraud and illegal mishandling of ballots.

9. Penn requests the following relief:

(a) All 2022 Primary Election ballots be preserved for up to twenty-two months for further review pursuant to HAR § 3-177-757.

(b) Delaying the certification of the 2022 Primary Election until a "statewide audit and recount take[s] place"; and

(c) Requiring the Office of Elections to be "held accountable" and "adhere[] to clearly defined protocols and guidelines to ensure all necessary measures in support of enhancing election integrity are in place before the General Election on Saturday, November 8, 2022."

10. The Office of Elections asserts the complaint should be dismissed with prejudice or, alternatively, that summary judgment be granted in its favor.

<u>CONCLUSIONS OF LAW</u>

1. When reviewing a request to dismiss a complaint, the court's review "is based on the contents of the complaint, the allegations of which [the court] accept[s] as true and

4

construe[s] in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Casumpang v. ILWU, Local 142, 94 Hawaiʻi 330, 337, 13 P.3d 1235, 1242 (2000) (quotation marks and citation omitted).

2.   When considering a request to dismiss a complaint, the court need not accept conclusory or formulaic recitations on the legal effects of the events alleged.  Kealoha v. Machado, 131 Hawaiʻi 62, 74, 315 P.3d 213, 225 (2013).

3.   A complaint challenging the results of a primary election fails to state a claim unless the plaintiff demonstrates errors, mistakes, or irregularities that would change the outcome of the election.  See HRS § 11-172; Funakoshi v. King, 65 Haw. 312, 317, 651 P.2d 912, 915 (1982).

4.   Plaintiffs challenging a primary election must show that they have actual information of mistakes or errors sufficient to change the election result.  Funakoshi, 65 Haw. at 316-17, 651 P.2d at 915.

5.   HRS § 11-172 provides in relevant part:  "With respect to any election, any candidate, or qualified political party directly interested, or any thirty voters of any election district, may file a complaint in the supreme court.  The complaint shall set forth any cause or causes, such as but not limited to, provable fraud, overages, or underages, that could cause a difference in the election results."

5

6. In order for a primary election complaint to be legally sufficient, it must "show[] that the specific acts and conduct . . . complain[ed of] would have had the effect of changing the results of the primary election[.]" Elkins v. Ariyoshi, 56 Haw. 47, 49, 527 P.2d 236, 237 (1974); see Funakoshi, 65 Haw. at 314, 651 P.2d at 915 ("'[D]ifference in the election results' in HRS § 11-172 . . . mean[s] 'a difference sufficient to overturn the nomination of any particular candidate or candidates in the primary.'" (Quoting Elkins, 56 Haw. at 49, 527 P.2d at 237)).

7. HRS § 11-173.5 (2009 & Supp. 2021) sets forth, among other matters, time requirements for primary election contests to be filed in the supreme court, as well as the remedy allowed to be provided in primary election contests.

8. Having the court decide which candidate was nominated or elected is the only remedy that can be given in a primary election contest. Funakoshi, 65 Haw. at 315-16, 651 P.2d at 914. In other words, the "only statutory relief to which plaintiff is entitled under HRS § 11–173.5(b) would be to have this Court declare the name of the candidate to be nominated or elected." Id. at 315, 651 P.2d at 914.

9. A complaint challenging the results of a primary election fails to state a claim unless the plaintiff demonstrates errors, mistakes, or irregularities that would change the outcome of the election. See HRS § 11-172; Funakoshi, 65 Haw. at 317, 651 P.2d at 915.

6

10.  Taking Penn's allegations as true and viewing them in the light most favorable to him, requiring (a) all 2022 Primary Election ballots to be preserved for up to twenty-two months for further review, (b) a delay of the 2022 Primary Election certification until a "statewide audit and recount" occurs, and (c) the Office of Elections to be held accountable and adhere to clearly defined protocols and guidelines to ensure all necessary measures in support of enhancing election integrity are in place before the General Election on Saturday, November 8, 2022, are not remedies authorized by HRS § 11-173.5(b) ("[t]he judgment shall decide what candidate was nominated or elected"). See Funakoshi, 65 Haw. at 315-16, 651 P.2d at 914.

11.  Penn's complaint thus fails to state a claim upon which relief can be granted.

## JUDGMENT

Based upon the foregoing findings of fact and conclusions of law, judgment is entered dismissing the complaint.

DATED: Honolulu, Hawaiʻi, September 6, 2022.

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins



7